## THE FARMERS' AND CITIZENS' BANK OF LONG ISLAND v. AUSTIN SHERMAN.

In an action upon a promissory note, held by the plaintiffs as collateral security, where the defendant sets up in his answer the defense of payment, he may give in evidence any facts, which in law, amount to a satisfaction of said note, as against such plaintiffs.

Where such note, held as collateral security by the plaintiffs, had been paid to the plaintiffs by the payee thereof, by the delivery of lumber of sufficient value to satisfy the same, which lumber was delivered to, and accepted by, the plaintiffs in pursuance of an agreement that the payee might withdraw any of the collaterals held by the plaintiffs to the amount of lumber delivered to them, and he designated such note to be withdrawn, *Held*, that under the plea of payment, the defendant might give evidence of such agreement and the transactions under it, and that when proved the plea of payment was sustained.

*Held*, also, that the note having been given for the accommodation of the payee, that such agreement and the transactions under the same amounted to a payment of the note as between the maker and the payee of the same.

APPEAL· from judgment of New York Superior Court. The action was commenced in November, 1857. It was brought against the defendant as the maker of a note, dated 5th July, 1854, for the sum of $1,980, payable sixty days after its date, to the order of Thompson, Skillman & Co., and by them indorsed.

The defense set up in the answer was, that the note was made without consideration to accommodate one Ralph Pomeroy, and that after it became due and payable, it was fully paid and satisfied to the said plaintiffs by the said Ralph Pomeroy, before the commencement of this suit.

The cause was tried in May, 1859, before Mr. Justice SLOSSON and a jury. The plaintiffs produced the note, and the making, indorsement and transfer to the plaintiffs having been admitted, they rested.

The defendant then called Ralph Pomeroy (who was one of the firm of Thompson, Skillman & Co.) as a witness. He testified that the note was negotiated by him to the plaintiffs; it was an accommodation note, borrowed for his firm of Thompson, Skillman & Co.; that he made an

arrangement with the bank for the payment of it, with other indebtedness; it was to be paid in lumber.

The defendant then offered in evidence two papers, 1st. A letter to Pomeroy, dated September 11, 1855, signed by the president and cashier of the bank, in these words: "Ralph Pomeroy, Esq.: Dear Sir—Our bank have agreed to give you longer time to fulfill the contract made with you by Mr. T. J. Van Zant, Laurens Reeve and L. S. Richardson, on the part of this bank, provided that you deliver us the $1,000 worth of lumber agreed by you with T. J. Van Zant, this fall. You can send us as large a number of sugar shooks this fall as you are able—price as per contract." 2d. An agreement made and executed on the 12th May, 1855, by and between Ralph Pomeroy, Laurens Reeve and Thomas J. Van Zant. The plaintiffs objected to the introduction of these papers, on the ground that they did not sustain any allegations in the defendant's answer, did not prove payment by defendant, were irrelevant and incompetent to prove any issue raised by the answer, and operated as a surprise upon the plaintiffs; but the court overruled the objections, and admitted the evidence under exception. The agreement was as follows:

"Whereas, the Farmers' and Citizens' Bank of Long Island, at Williamsburgh, hold certain securities now or formerly belonging to Ralph Pomeroy, as collateral, amounting to about the sum of $9,000, more or less, which are in controversy between said bank and Pomeroy, and the said bank claims that Pomeroy is indebted to it in the sum of about $13,000, more or less, exclusive of the said securities. Now, therefore, Laurens Reeve, of Jamaica, in the county of Queens, and Thomas J. Van Zant, of Brooklyn, late Williamsburgh, for and in consideration of the sum of $100 to them in hand paid by the said Ralph Pomeroy, the receipt whereof is hereby confessed, hereby agree, to and with the said Ralph Pomeroy, that the said Farmers' and Citizens' Bank of Long Island shall surrender up to the said Pomeroy the collateral securities aforesaid, and the said bank shall buy of the said Pomeroy, who shall sell to it, so much lumber of the descriptions and

at the price hereinafter stated, as shall be sufficient to pay and cancel the indebtedness of the said Pomeroy to the aforesaid bank, to wit: (here follows the descriptions of lumber and the prices to be paid therefor.)  The said bank shall notify the said Pomeroy, within two weeks from this date, of the quality of each of the above descriptions of lumber, or the quantity of any two or more of the above descriptions of lumber that they will receive in payment of the aforesaid indebtedness, or, in default thereof, the said Pomeroy shall have the right to make such designation.

"The said lumber so designated shall be delivered by the said Pomeroy upon the land of the Potsdam and Watertown Railroad, at or near the junction of the railroad with the grade leading to Pomeroy's mill, as soon as conveniently may be, and at least as fast as follows: $1,000 worth thereof in the month of July next; $3,000 in August; $3,000 in September; $3,000 in October; and the balance to make up such indebtedness in the month of November next.  Upon the delivery of the lumber so to be delivered in each month, the said bank shall return to the said Pomeroy such paper to the amount of the value of the delivery each month, as the said Pomeroy may require to be returned out of the paper held by the said bank against him, except the Sherman note now in judgment.

"And it is further agreed, that as often as the said Pomeroy shall deliver 100,000 feet of the aforesaid lumber at the place aforesaid, and $200 worth in addition thereto of the same description of lumber at the price aforesaid, the said bank shall pay to the said Pomeroy, on request, $200, until the whole amount of said lumber shall have been delivered.

"The said bank shall discontinue all suits already brought against Thompson, Skillman & Co. and said R. Pomeroy, and no claim for costs shall be made by either party to such suits, or any of them."

Reeve and Van Zant were directors of the bank at the time this agreement was concluded.

The defendant then proposed to show what was done under the agreement, to which the plaintiffs objected, on the

grounds stated under the objection to the agreement itself, but the court overruled the objection, and the plaintiffs excepted.

The defendant then proved by Pomeroy and others this state of facts : Pomeroy, at the time the note in suit was made and negotiated, resided in Williamsburgh, and was a manufacturer of sarsaparilla and a lumberman, and was also a director in the bank. His mills were at Potsdam, and his woods in Franklin county. In May, 1855, he and his firm were indebted to the bank some $13,000, consisting of over-due paper, including the note in suit, &c. He spent most of his time, in 1855, at his mills in Potsdam. In May, 1855, Reeve and Van Zant, who were directors, were at his mills, to look after and make some arrangement in respect to his debt due to the bank. At this time, the agreement of the 12th May, 1855, above set forth, was entered into. Dr. Henry Hewitt, of Potsdam, was the agent of the bank, to receive and inspect the lumber to be delivered by Pomeroy, under and in pursuance of the agreement. In September, Pomeroy applied to the bank for an extension of time to fulfill the agreement, and under date of September 11th, the president and cashier wrote to him the letter above set forth. Pomeroy went on to fulfill, and by the 15th November, 1855, had delivered to Hewitt, for the bank, and the bank received and sold the same and had the proceeds, 10,000 pickets, 68,242 feet of pine lumber, 1,546 feet of spruce lumber, and 10,000 sugar box shooks, amounting in value, at the contract prices, to $8,840.20. In a communication addressed to Pomeroy 16th July, 1856, by the cashier of the bank, it is admitted that the bank had received, under the contract of 12th May, 1855, the lumber specified, at a valuation of $8,840.25. Upon the receipt of this communication, Pomeroy gave the bank notice that he wished to withdraw the note in suit; and on the 22d June, 1857, he gave to the defendant the following order, which was presented to the cashier of the bank, on the 27th January, 1858:

"NEW YORK, *June* 22, 1857.

"The cashier of the Farmers' and Citizens' Bank of Long Island, will please deliver to Austin Sherman, or his order,

my two notes, one dated March 2d, 1854, at three months, for $2,237.19; *the other dated July 5th,* 1854, *at sixty days, for* $1,980, and all other notes of *his* received either from me or from Thompson, Skillman & Co., and charge the same to the account of the lumber delivered by me to your bank, as those notes are to be canceled by such account. If there is any other liability of said Sherman's, arising through me or through Thompson, Skillman & Co., you will also charge the same to my account of lumber, and release him from the same.

" Yours respectfully,

" RALPH POMEROY."

In the letter of the cashier of the 16th July, 1856, he states the account at that date between the bank and Pomeroy, in which Pomeroy is credited $8,840.25 for lumber delivered, as per statement of Dr. Hewitt, before the 15th November, 1855.

When the evidence closed, the plaintiffs moved to strike out all the defendant's testimony respecting the agreement and the alleged extension of it, and respecting what was done under either, on the ground, among others, that such testimony did not sustain the allegations of the answer, but made a different case from the one set up in the answer. The court denied the motion, and the plaintiffs excepted.

The plaintiffs also requested the judge, among other matters, to charge the jury that the defendant's evidence did not sustain the defense set up in his answer, and that the plaintiffs were entitled to a verdict; and also requested him to charge that none of the agreements accrued to the benefit of the defendant, or could be taken advantage of by him in this action. The judge refused the request, and the plaintiffs excepted.

The judge, after stating the nature and object of the action, and of the defense generally, charged the jury:

1st. That for the purposes of this trial, the defendant might avail himself of the transactions between Pomeroy and the bank to sustain his defense. To which the plaintiffs excepted.

2d. That under the agreement of 12th May, 1855, Pomeroy had a right to withdraw securities to the amount in value of

the lumber and stuff described in the contract delivered and received. . To this the plaintiffs excepted.

3d. That if the jury were satisfied that at the time he gave the order on the bank for this note, there was then an amount of lumber delivered to the bank exceeding in value the amount of the note, and that none of the securities had then been withdrawn, the defendant would be entitled to a verdict, otherwise the plaintiffs would be entitled to a verdict. To this the plaintiffs excepted.

The jury found a verdict for the defendant. The plaintiffs made a case, and on that and an affidavit of their cashier, that he had acted as their agent in preparing the case for trial, and was greatly surprised, on the trial, by the testimony in relation to the lumber transaction between Pomeroy and the bank, and the admission thereof under the pleadings in the action, moved, at Special Term, for a new trial, which was denied.

The defendant entered judgment on the verdict for costs, and the plaintiffs appealed to the General Term, from the judgment, and also from the order denying a new trial. The General Term affirmed the judgment and order. The plaintiffs appeal to this court, from the judgment, and in their notice of appeal give notice that they will ask this court to reverse the order of the Special Term, denying the motion for a new trial.

*John M. Martin*, for the appellants.

I. The defendant's note, by its terms, and by the law applicable to it, was payable in money. (Chitty on Bills, 433, and cases cited; *Cook* v. *Satterlee*, 6 Cow., 108.)

And under a plea of payment it must be proved that the payment was made in money or its equivalent. (Saunders Pl. and Ev., 715, and cases.)

And if there be no payment in money or its equivalent, the defense is more in the nature of accord and satisfaction than payment. (Id.)

Of such evidence there was a total failure in this case; and in the absence of all material allegations, except pay-

ment, the justice ought to have instructed the jury that the plaintiffs were entitled to recover, as requested by them. (*Gasper* v. *Adams*, 28 Barb., 441; *Whittaker* v. *Merrill*, 30 Barb., 389; *Codd* v. *Rathbone*, 19 N. Y., 37; *Moore* v. *McKibbin*, 33 Barb., 246; *Lyon* v. *Blossom*, 4 Duer, 318; *Russell* v. *Conn*, 20 N. Y., 81–83.)

II. Under the Code of 1852, payment, like counterclaim and accord and satisfaction, is new matter and must be specially pleaded, under section 149 of the Code; and all facts necessary to be proven must be alleged, or evidence thereof will be excluded. (*Barzill* v. *Isham*, 12 N. Y. [2 Kern.], 9, 17; *McKyring* v. *Bull*, 16 N. Y., 297, 309; *Allen* v. *Patterson*, 7 id. [3 Seld.], 476, 478; *Belknap* v. *Sealey*, 14 id. [4 Kern.], 143, 153; *Freeman* v. *Fulton Ins. Co.*, 14 Abb. Pr., 398; *Rode* v. *Rutger's Ins. Co.*, 6 Bosw., 23; *Bank U. S.* v. *Smith*, 11 Wheat., 174; *Texier* v. *Gowin*, 5 Duer, 399; *Safford* v. *Drew*, 3 id., 632; *Smith* v. *Leland*, 2 id., 497.)

III. A party has a right to be apprised of the nature and facts of his opponent's case, that he may know how to prepare to meet it. (Cooper's Pl., 7; Welf. Pl., 85; *Smith* v. *Clark*, 12 Ves., 481; *Crocket* v. *Lee*, 7 Wheat., 522; *Lyon* v. *Tallmadge*, 14 Johns., 516; *Consequa* v. *Fanning*, 3 Johns. Ch., 587.)

And if either party neglect so to apprise his opponent, and evidence, of which no notice is contained in the pleadings, is admitted, the injured party has a right to a new trial at his opponent's expense. (*Barton* v. *Dunlap*, 2 Mills Const. Rep., 140; *The People* v. *Holmes*, 5 Wend., 191, 199; *Mills* v. *McCoy and wife*, 4 Cow., 406, 407; *Carrier* v. *Dellay*, 3 How. Pr., 173; *Prindle* v. *Aldrich*, 13 id., 466, 471; *Sage* v. *Mosher*, 17 id., 367.)

In this case the answer gave no notice of the defendant's intention to prove payment any other way than by cash.

It was wholly silent as to the agreement, and the facts stated therein, and as to the renewal and performance of it by Pomeroy, as sworn to by him; and none of these matters being at issue, no evidence of them was legally admissible. (Code, § 149; *The New York Central Ins. Co.* v. *The*

*National Protection Ins. Co.*, 20 Barb., 468, 473; *Kelsey* v. *Western*, 2 Comst., 500, 509, and cases cited under 2d Point.)

Such proof, and the unexpected admission of it under such pleadings, could scarcely fail to surprise the plaintiff, and such is proved to have been the result by the affidavit of Mr. Beach. (See the cases of *Van Geison* v. *Van Geison*, 10 N. Y., 316, and *Seeley* v. *Engell*, 3 Kern., 582, cited by Justice BOSWORTH in his opinion.)

IV. The plaintiffs had a right to presume that no evidence but such as the answer gave notice of, would be admitted on the trial; and the admission of it is a surprise for which a new trial will be granted. (*Boyce* v. *Yoder*, 2 J. J. Marshall, 515; *Starkweather* v. *Loomis*, 2 Verm., 573; *Helm* v. *Jones*, 9 Dana, 134; *Trowbridge* v. *Didier*, 4 Duer, 450; *Hughes* v. *Wood*, 5 id., 603, note; *Graham* v. *McCoun*, 5 How., 353; 1 Code R. N. S., 43; *Littlejohn* v. *Mune*, 3 Paige, 280; Voorhies' Code, p. 267, note C, and cases cited.)

This, it is submitted, shows a clear case for a new trial.

V. But if the agreement had been set forth in the answer, the evidence of it would have been improperly admitted, because the matters in it do not affect the defendant's obligation to pay his note to the holder; and therefore do not constitute a defense to the plaintiffs' action.

A breach of an agreement between the plaintiffs and Pomeroy, that the plaintiffs will surrender Sherman's note to Pomeroy upon certain conditions, does not release Sherman from his obligation to pay the note; nor does it furnish any legal reason why Sherman should not pay it to the plaintiffs if they hold it.

Sherman is bound by his contract to pay his note to the holder, whoever he may be.

He was no party to Pomeroy's agreement, and there is no privity between him and the plaintiffs in respect to it.

Pomeroy's agreement could not be set up by Sherman as an accord and satisfaction even; because matters received in satisfaction must be given by the debtor and not by a stranger. (*Clow* v. *Borst*, 6 Cow., 37; *Stark's adm'r* v.

*Thompson's ex.*, 3 Monroe, 296; *Grimes* v. *Bolfield*, Cro. Eliz., 541.)

Pomeroy's alleged performance of his agreement with the plaintiffs never was accepted by them as payment or otherwise; and they never gave him the note. Pomeroy may have a right of action against them for a breach of their agreement with him; but Sherman has nothing to do with the controversy, nor can he be a party to it. (See *James* v. *Isaacs*, 12 C. B., 791.) If evidence of the agreement respecting the lumber was properly admitted, then the plaintiffs' evidence of the value of the lumber was improperly excluded.

If the court shall be of opinion that the defendant's answer was unproved in its " entire scope and meaning," or that Pomeroy's agreement cannot be set up by Sherman as a defense to the plaintiffs' action, then the plaintiffs are entitled to a reversal of the judgment against them, and to an order for such final judgment in their favor as ought to have been given at Special Term, in that view of law.

*C. W. Sandford*, for the respondent.

I. The answer of the defendant formed a complete issue, upon which the plaintiffs went to trial. It set up the payment and satisfaction of the note by Pomeroy, their original debtor, and they were thereby fully apprised of the defense to be proved at the trial. (*Van Geison* v. *Van Geison*, 12 Barb., 520; 16 N. Y., 304.)

II. If the plaintiffs deemed the allegations in the answer as indefinite or uncertain, they should have applied by motion to make it more certain and definite, under section 160 of the Code. (*Seely* v. *Engell*, 3 Kern., 548, II; *Howell* v. *Frazer*, 1 Code R., N. S., 270; *Bement* v. *Wisner*, 1 id., 143.)

III. The pretense of surprise by the proof of Pomeroy's settlement, is simply absurd. The defendants had their cashier in court, with all their papers relating to the Pomeroy lumber transactions, and witnesses to prove the value of the lumber and the expenses incurred in its storage and sale.

IV. The agreements between the plaintiffs and Pomeroy, the principals in the transaction, were properly admitted in evidence, on behalf of the defendant, and also the evidence of their performance by Pomeroy.

V. The order of Pomeroy in favor of the defendant, for the note in suit, as well as his verbal notice, were abundant evidence of his election under the agreement of May, 1855.

VI. The verdict of the jury is conclusive upon the question of the performance of the agreement on the part of Pomeroy, as to the time of the delivery of the lumber.

The bank admitted the receipt of $8,840, prior to the 15th November, 1855.

VII. All the requests to the judge to charge the jury, were properly refused, and the case was fully and fairly submitted to them upon the merits.

WRIGHT, J.   The answer set up as a defense, that the note on which the action was brought, was made by the defendant, without consideration, to accommodate one Ralph Pomeroy, and that after it became due and payable, and before the commencement of the action, it was fully paid and satisfied. to the plaintiffs by Pomeroy. The defense, then, was payment.

To sustain it, the defendant was allowed to prove, in substance, these facts : The note was made for the accommodation of Ralph Pomeroy, who was one of the firm of Thompson, Skillman & Co., the payees named in it, and was by him transferred to the plaintiffs, with other notes, as collateral security for money due by him to them. In May, 1855, Pomeroy entered into a written agreement with the plaintiffs to pay his debt to them in lumber, at certain prices specified in the agreement, to be delivered at different times, during the next summer and fall, and the plaintiffs agreed to return to Pomeroy such paper (or securities) held by them, to the amount of such deliveries as he might require to be returned. Under and in pursuance of this agreement, and another extending the time for Pomeroy to perform it, he delivered to the plaintiffs (who sold and received the proceeds) lumber

at the prices designated in the agreement, amounting in value to $8,840.25. After this amount of lumber had been delivered, and about the .16th July, 1856, Pomeroy notified the bank of his wish to withdraw the note in suit. At this time none of the notes held by the bank as security for Pomeroy's debt had been withdrawn.

The agreement between Pomeroy and the plaintiffs was objected to as inadmissible under the pleadings, and as a surprise upon them, the answer giving no notice of an intention to introduce such evidence; and after the evidence was closed, their counsel moved to strike out of the case all the testimony respecting the agreement, and what was done under it, on the ground that such testimony did not sustain the allegations of the answer, but made a different case from the one therein set forth. What the counsel meant by this, would not be clear, unexplained by his points and the argument at bar. It seems to have been this : The answer simply alleged payment, which, as it is claimed, in legal, contemplation, means payment in money, and evidence to prove payment in any other way than by cash, did not sustain the allegations of the answer; that the answer gave no notice of the defendant's intention to prove payment in any other way than by cash; it did not set forth or disclose the particulars of the transaction between Pomeroy and the plaintiffs, and hence the unexpected admission of proof of the transaction, under such a pleading, surprised them. There is no force, in these objections, considered as a question of pleading. The answer alleged payment, and it was competent, under the pleading, to prove that payment had been, in fact, made either in cash or in some other way. If payment be relied on as a defense, it would be bad pleading to allege the evidence of the fact, instead of the fact itself; and when the fact of payment is pleaded, there is no rule requiring the evidence, or a concatenation of evidence, establishing payment, to be alleged in the pleading to render such proof legally admissible. In this case it was not required that the particular facts relied on as amounting to payment, should have been set forth in the answer. It was enough, if those facts

sustained the plea of payment. If the particulars of the transaction between Pomeroy and the plaintiffs was not sufficiently disclosed by the answer, the plaintiffs' remedy was a motion under the 160th section of the Code. They could not accept the plea, and go to trial upon it, and then interpose the objection, for the first time, that it was not sufficiently descriptive of the particulars relied on as constituting payment. Nor was there any question of surprise in the case. That arises where there is a variance between the allegation of a pleading and the proof. Admitting competent proof to sustain an action or defense, though its admission was unexpected by the adverse party, raises no question of surprise, entitling the disappointed suitor to be relieved on that ground.

There was no reason, then, for excluding evidence of the transactions between Pomeroy and the bank, because of defectiveness in the pleadings.

The judge was requested and refused to charge: 1st. That the defendant's evidence did not sustain the defense set up in the answer, and that the plaintiffs were entitled to a verdict; and, 2d. That none of the agreements between Pomeroy and the bank inured to the benefit of the defendant, or could be taken advantage of by him in this action. These requests, in the view I take of the case, were properly refused. Indeed, I think, the evidence sustained the defense, and being entirely uncontradicted, called for the submission of no question to the jury. The note sued on was made for the accommodation of Pomeroy. The plaintiffs had received it from Pomeroy, and held it and other notes as collateral security merely for debts owing to them by him. In May, 1855, an agreement was executed between Pomeroy and the plaintiffs, by which they agreed to take lumber at prices designated in payment of his indebtedness, and of the collaterals held by them, and that Pomeroy might specify the collaterals to which the payments should apply. Under and in pursuance of this agreement, Pomeroy delivered to the plaintiffs lumber amounting in value to $8,840.25, and they accepted the lumber, sold it and received the proceeds; and Pomeroy notified them of

his wish to withdraw the note in suit. I see not why, upon Pomeroy thus requiring the note to be returned to him, the defendant was not entitled to have it deemed paid. It was not a business note, but one made for Pomeroy's accommodation, and the bank held it and others as collateral security merely. The bank agreed to take lumber from him in payment of his debt and the collaterals, and that he might specify the collaterals to which the payments should apply. After sufficient lumber had been delivered and accepted to satisfy it, he designated the defendant's note as one to be deemed paid. I concur with the court below, " that, from the time of such designation, the note was, in fact, paid, not only as between Pomeroy and the plaintiffs, but as between the defendant and the plaintiffs."

I am for affirmance of the judgment of the Superior Court.

DENIO, Ch. J., DAVIES, PORTER and DAVIS, JJ., also concurred in affirming the judgment; BROWN, J., read for reversal.

Judgment affirmed.