UVALDE ASPHALT PAVING CO. v. NATIONAL TRADING CO. et al.

(Supreme Court, Appellate Division, First Department.    December 10, 1909.)

1. APPEAL AND ERROR (§ 173*)—ADHERENCE TO THEORY BELOW—INSTRUCTIONS—WAIVER OF ISSUES.
Where, in an action on a promissory note, defendant, an indorser before delivery, did not request a charge submitting the issue of failure of consideration as to him, or request a ruling on that question, he waived that defense and cannot sustain the judgment for him on that ground.
[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1091, 1113; Dec. Dig. § 173.*]

2. BILLS AND NOTES (§ 226*)—ACCOMMODATION INDORSEMENT—CONSIDERATION—SUFFICIENCY.
Even though one appeared to have signed a promissory note as an accommodation indorser, there was sufficient consideration for his indorsement if the note would not have been accepted without it.
[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. § 534; Dec. Dig. § 226.*]

3. EVIDENCE (§ 423*) — PAROL EVIDENCE — VARYING WRITINGS — PROMISSORY NOTE.
In an action on a promissory note executed by defendant company and indorsed by the individual defendant, parol testimony of a conversation between plaintiff's president and the individual defendant when the note was executed, in which the former stated that he would allow defendant credit on the note by allowing on asphalt work done by plaintiff during the year at a certain rate, tended to contradict or vary the note, and was not admissible.
[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 1961; Dec. Dig. § 423.*]

4. BILLS AND NOTES (§ 489*)—DISCHARGE—PAYMENT—SUBSEQUENT INDEBTEDNESS.
While an indebtedness incurred to the makers by the payee of a promissory note after its execution would be an offset by way of counterclaim against their liability on the note, evidence thereof was not admissible on the issue of payment of the note.
[Ed. Note.—For other cases, see Bills and Notes, Dec. Dig. § 489.*]

5. PAYMENT (§ 63*)—PLEADING—GENERAL PLEA.
Under a general plea of payment, any arrangement, which by agreement of the parties operated to discharge the debt may be shown.
[Ed. Note.—For other cases, see Payment, Cent. Dig. § 156; Dec. Dig. § 63.*]

6. BILLS AND NOTES (§ 527*)—ACTIONS—SUFFICIENCY OF EVIDENCE—PAYMENT.
In an action on a promissory note executed by one defendant and indorsed by the other, evidence, even if all competent, *held* not to show an agreement by which any credit due to defendants after the execution of the note should· be allowed in payment thereof, or even to show that there was any balance or credit due defendants.
[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 1847–1855; Dec. Dig. § 527.*]

Houghton and Scott, JJ., dissenting.

Appeal from Trial Term, New York County.

Action by the Uvalde Asphalt Paving Company against the National Trading Company and another.  From a judgment for defendants and

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

an order denying a new trial, plaintiff appeals. Reversed, and new trial granted.

Argued before INGRAHAM, McLAUGHLIN, LAUGHLIN, HOUGHTON, and SCOTT, JJ.

Leo G. Rosenblatt, for appellant.

Benjamin F. Norris, for respondents.

LAUGHLIN, J. This is an action on a promissory note made by the defendant company, bearing date the 6th day of March, 1903, whereby, for value received, it promised to pay to the order of the plaintiff on demand after date the sum of $10,452.32, with interest at 6 per centum per annum. The note was given for a balance of account between the parties on business transactions during the year 1902. It was indorsed by the defendant Grening, who was president of the defendant company, before delivery. The defendants answered separately, and each answer contains a simple plea of payment, together with a counterclaim. Upon the trial the counterclaims were waived. The making of the note and the indorsement and delivery were admitted. The defendant Grening at the opening of the trial asked leave to amend his answer by setting up the additional defense of failure of consideration, which amendment was allowed. The plaintiff offered the note in evidence and proved a computation of interest and rested. The defendants then assumed the burden resting upon them of proving the defense of payment, and the defendant Grening his separate defense of want of consideration. The defendant Grening testified that he received nothing of value for his indorsement. He was then asked, "Q. Were you under any liability, or had you sustained any loss, or had anything of that kind occurred during this year 1902?" to which he answered, "I did not." The president of the plaintiff testified, and his testimony in this regard was uncontradicted: That during the year 1902 Grening, while in the employ of the plaintiff under a salary of $2,500 per annum and in charge of certain cement and other material which belonged to the plaintiff, was careless with respect to his custody and supervision thereof, whereby $4,500 worth of cement was stolen; that he admitted his carelessness in the premises, and, on request that he indorse the note as further security, he consented to do so.

At the close of the evidence, no motion was made to dismiss the complaint as to the defendant Grening, and the sole question submitted to the jury was whether the note had been paid. No request to charge with respect to the evidence relating to the liability of the defendant Grening was made, and no exception was taken to the omission of the court to submit the question of failure of consideration to the jury. The defendant Grening is therefore in no position to sustain the judgment on the theory that there was no consideration for his indorsement, for by failing to request a ruling on that question, or to have it submitted to the jury, he, in effect, waived the defense so far as this trial was concerned. It may be observed, however, that although he appears to have been an accommodation indorser, if, as is indicated by the testimony of the president of the plaintiff, the note

would not have been accepted without his indorsement, that was a sufficient consideration therefor.

The single question therefore which requires serious consideration arises upon the evidence with respect to payment. On that question we are of opinion that the court erred in receiving evidence of a conversation between the president of the plaintiff and the defendant Grening at the time the note was made. The entire theory of the defense is based upon the testimony thus erroneously received. The defendant Grening was asked whether anything was said in his conversation with the president of the plaintiff at the time the note was given with reference to the payment of the note or how it was to be paid. He answered this question in the affirmative, and was then asked to state what was said on that subject. This was objected to by counsel for plaintiff on the ground that the terms of the note with respect to payment could not be varied by parol. The objection was overruled, and exception duly taken. The witness then answered:

"He said that he would make up that difference to me in the next year's work; that he would give us credit sufficiently so that we would lose nothing on the next year's work; that credit was to be given to us by making an allowance on asphalt work that they did; that allowance was to be made at the rate of 10 cents a yard."

The witness further testified that at the end of the year 1906 he had a further conversation with the president of the plaintiff with reference to this allowance that was to be made, according to the conversation had at the time that the note was given, in which the latter said:

"He wanted to square the books of the company, and that he had ascertained about how we stood; and he said that they wanted to credit on the books of the company the differences between the concrete work and the asphalt work, and whatever we owed in the shape of that note. And he gave me a list, and asked me to make out a bill on the basis of 38 cents a yard, and that would square the books."

The witness then testified that he made out a bill pursuant to this suggestion under date of December 31, 1906, which was received in evidence and contained a charge against the plaintiff for $43,695.44, for a loss on grading and concreting certain streets in the borough of Brooklyn, and perhaps partly in the county of Queens, inasmuch as their contract relations embraced transactions in both places. The amount was arrived at by charging 38 cents per square yard for 114,988 square yards, and was stated in the bill to be "as agreed upon between Mr. Rokeby (who was president of the plaintiff) and Mr. Grening." The bill was receipted by the defendant company. It contained no reference to the note. The defendant Grening was also permitted to testify, under objection and exception on the ground that the evidence was irrelevant and immaterial, that he procured certain other contracts for the plaintiff pursuant to an arrangement by which he was to receive 10 cents a square yard for wood block and slag block paving and sewer work, and that profits were made on such contracts; but he gave no data upon which the amount of his commissions upon such contract work could be ascertained.

The president of the plaintiff testified: That his company continued

relations with the defendant and with Grening until the year 1907, and continued Grening in its employ on a salary as aforesaid after its relations with his company terminated; that there was an account between the companies with respect to their dealings after the execution of the note; that on that account the defendant company was given credit for the amount of the bill to which reference has been made; but that it left a balance due and owing to the plaintiff from the defendant company of upwards of $80,000 exclusive of the note; that in this account the defendant company was charged with the amounts advanced to it and was credited with all amounts with which it was entitled to credit; that there was no agreement or understanding that either of the defendants was to be credited on the note on account of such dealings, or on account of any commissions or other credits to which they or either of them became entitled in the course of the further business relations between the parties; and that he had frequently discussed the amount of this balance owing by the defendant company with Grening, who never disputed its correctness.

The plaintiff conceded the payment of $2,700 on the 7th day of May 1908, by the recovery and collection of a judgment against the firm of Sigretto & Mannino on a mechanic's lien filed on account of part of the indebtedness included in the note, for the sum of $4,500, out of which it paid by direction of the defendant company on an indebtedness owing by the latter the sum of $1,800, leaving a balance of $2,700 realized by the plaintiff and applicable to payment on the note. No evidence was given on the part of either defendant with respect to whether or not there was a general account between the plaintiff and defendants other than as already stated, before the president of the plaintiff testified with respect thereto, and, after the testimony concerning the same, the defendant Grening was recalled and gave the following testimony only, relative thereto:

"Neither the Uvalde Asphalt Paving Company nor Mr. Rokeby ever advanced to our company the sum of $100,000, or loaned it that sum, or any sum whatever."

On this evidence the court submitted the question to the jury as to whether the balance owing on the note had been paid by the credits to which the defendants claimed to be entitled on account of the subsequent dealings between the parties. The parol evidence tended to vary the terms of the note, and, since it was a conversation had at the time the note was given, it was clearly incompetent, for it tended to impeach or contradict or vary the unconditional promise to pay the money contained in the note. Jamestown Ass'n v. Allen, 172 N. Y. 291, 64 N. E. 952, 92 Am. St. Rep. 740.

It is clear, we think, that if the evidence of the conversations between the president of the plaintiff and the defendant Grening at the time the note was given, which was incompetent, had not been received, there would have been no basis for the submission of this question to the jury. It is to be borne in mind that the defendants abandoned their counterclaims and stood upon their simple plea of payment only. If the plaintiff subsequently became indebted to the defendants or either of them, such indebtedness would be a good

offset by way of counterclaim against their liability on the note; but it would not constitute a payment of the note. The rule formerly was that, under a simple plea of payment, payment in money or its equivalent only could be shown, and that, where a claim of payment was based on a special agreement growing out of an independent contract, it was necessary to specially plead the facts (Morley v. Culverwell, 7 Mees. & W. 174, cited and followed in Jennings v. Osborne [City Court, General Term] 2 City Ct. R. 195); but the rule now seems to be that, under a general plea of payment, proof of any agreement between the parties for the payment and discharge of the obligation and of its performance, which according to the agreement of the parties operated to discharge the debt, may be shown (McLaughlin v. Webster et al., 141 N. Y. 76–83, 35 N. E. 1081; Farmers' & Citizens' Bank v. Sherman, 33 N. Y. 69; Stirna v. Beebe, 11 App. Div. 206, 42 N. Y. Supp. 614).

We are of opinion, however, that the evidence thus erroneously received, and the other evidence relating to it, to which reference has been made, did not, even if competent, establish an agreement by which any subsequent credit to which the defendants or either of them would become entitled should be applied on the note. In view of the fact that the plaintiff retained the possession of the note, and its possession was never demanded by the defendants or either of them, and that the president of the plaintiff testified specifically to the existence of a general account between the parties involving business transactions covering a period of several years, showing a large balance still owing from the defendant company or both defendants to it, we think the mere denial of the defendant Grening that the plaintiff advanced or loaned the sum of $100,000 to the defendant company was not sufficient to show that there was any balance owing from the plaintiff to the defendants or either of them on the account between them which would be applicable to the payment of this note, even if properly pleaded.

It follows therefore that the judgment should be reversed, and a new trial granted, with costs to appellant to abide the event.

INGRAHAM and McLAUGHLIN, JJ., concur.

HOUGHTON, J. (dissenting). I dissent. If this judgment is reversed, it must be done because error was committed in the reception of evidence, or because the defendant's plea of payment was not sufficient to permit proof that payment was made otherwise than by actual money.

No motion for judgment was made by the plaintiff, nor was there any motion made to disregard the plea and proof of payment, and the case went to the jury by consent of all parties upon the proposition as to whether or not the note in suit had been in fact paid. Such mode of trial was a confession on the part of the plaintiff that there was a question of fact for the jury to pass upon, and precludes it from moving to set aside the verdict against it on the ground that it was against the weight of evidence. Clement v. Congress Spring Co., 91 Hun, 636, 35 N. Y. Supp. 1004, affirmed 158 N. Y. 692, 53 N. E. 1124.

The prevailing opinion concedes that under a general plea of payment a party may prove such payment by performance of services or delivery of goods in satisfaction of the demand, and such is the express holding of Farmers' & Citizens' Bank v. Sherman, 33 N. Y. 69. In that case the question was squarely before the court. The action was upon a note payable in money. The defense was that it had been paid. The defendant was permitted to show, against the objection of the plaintiff, that the evidence was incompetent under the answer because it gave no notice of the defendant's intention to prove payment in any other way than by cash, that the defendant had delivered lumber to the plaintiff of sufficient value to satisfy the claim, and that plaintiff had taken it in satisfaction. The question of the admissibility of such proof, under the simple plea of payment, was the main question in the case and the principal one discussed, and the decision has never been questioned from the time it was rendered.

The questions of the sufficiency of the defendant's plea of payment and the right of the plaintiff to ask that the verdict be set aside as against the weight of evidence are therefore eliminated, and the only question remaining is whether the parol evidence given by the defendant, to the effect that at the time the note was given, as well as thereafter, the plaintiff agreed that certain commissions earned and credits on paving contracts should be applied in satisfaction of the note, which agreement was carried out by applying such commissions, tended to vary the terms of the written note, and was therefore incompetent.

It seems to me too plain for argument that such evidence did not tend to vary the terms of the written instrument, and that it was entirely competent proof. The parol evidence did not purport to prove that the note was not to be paid at all, or that the amount stipulated was not to be paid, or that the time of payment was different from that expressed. All that the parol evidence attempted to do was to show that the plaintiff had agreed to accept payment by taking the commissions which the defendant Grening had earned and applying them on the note as well as the amounts earned on the contract. If the plea of payment alone was sufficient to permit proof of payment in any manner other than by cash, it would logically follow that parol evidence to show payment other than by cash was competent. Such parol evidence was given in Farmers' & Citizens' Bank v. Sherman, supra, and neither the counsel nor the various courts which passed upon the question seemed to have a suspicion that it was incompetent because it tended to vary the terms of the written instrument. In Davis v. Spencer, 24 N. Y. 386, it was expressly held that an agreement between the payee of the note and the maker to apply the indebtedness of the payee to the maker and his partner in payment of the note operated as a satisfaction of the note, and that such agreement might be proved by parol evidence. To the same effect is Eaves v. Henderson, 17 Wend. 190. In Jilson v. Gilbert, 26 Wis. 637, 7 Am. Rep. 100, it was held that evidence of a parol agreement that a note should be surrendered in satisfaction for services rendered to the

payee by the maker did not tend to contradict the note, and was therefore admissible.

It is true that in the above cases the parol agreements as to payment were made after the execution of the notes; but the rule can be no different where the agreement is actually carried out and payment actually made in the manner agreed. Even though the evidence of Grening as to what the president of the defendant said at the time the note was given was incompetent, it is not sufficient to reverse the judgment. All he testified to as occurring at that time was that the plaintiff's president said that he would make up the difference in the next year's work and give such credit as that the defendants would lose nothing the following year. This did not amount to proof that the note was never to be paid, or even that it was to be paid in a particular manner. If the defendant had stopped there, he would have proved no payment of the note. What operated as a payment of the note was what in fact occurred more than three years after the giving of the note. Grening testified, and there is written evidence of that fact, that the plaintiff credited the defendants with more than $43,000 on the 31st of December, 1906. Grening also testified that up to the time of the bringing of the action on the note he had earned in commissions at least $7,500 on wood block paving, and the plaintiff's president himself, on cross-examination, said that those commissions did in fact amount to $7,500, and that, in addition thereto, the defendant had earned more than $10,000 as commissions on asphalt pavement. On the trial the plaintiff confessed that $2,700, collected from the Sigretto & Mannino judgment, should be credited on the note in suit. Grening testified that after the giving of the note the plaintiff's president agreed that these commissions should be applied in payment of it, and the president testified that he made no such agreement. The jury found that such agreement was made.

It was of no importance how much the other indebtedness of the National Trading Company to the plaintiff was, if in fact the plaintiff had agreed to first apply payment on the note out of any earnings of the defendant company or the defendant Grening. Jamestown Business College Association v. Allen, 172 N. Y. 291,[1] is not decisive of the question here involved. In that case there was an attempt to show a parol agreement that the note in suit was not to be paid at all unless the defendant availed herself of the scholarship or sold the same to some other person. In the present case the defendant does not dispute the note, or its amount or terms, or that it is owing, but simply says it has been paid in a specific manner. If no commissions had ever been earned, there would have been none to apply in payment.

They were earned, as plaintiff confesses, to an amount largely in excess of the note, and I think the judgment should be affirmed.

SCOTT, J., concurs.