(160 App. Div. 819)

NEWCOMB v. LA ROE.

(Supreme Court, Appellate Division, First Department. February 20, 1914.)

1. WILLS (§ 703*)—ACTION TO CONSTRUE WILL—EVIDENCE.

In an action for the construction of a will as to the effect of a legacy and an annuity therein upon defendant's claim for services to testator as a nurse during the last years of his life, evidence *held* to show that, if there were no contract between testator and defendant to the effect that the legacy should be in lieu of her wages, defendant had been paid in full.

[Ed. Note.—For other cases, see Wills, Dec. Dig. § 703.*]

2. WILLS (§ 703*)—ACTION TO CONSTRUE WILLS—EVIDENCE.

In an action by an executor for the construction of a will as to the effect of a legacy and an annuity therein upon defendant's claim for services to testator as a nurse during the last years of his life, evidence *held* to show that it was the understanding between testator and the defendant that the legacy was in lieu of any claim by defendant for wages.

[Ed. Note.—For other cases, see Wills, Dec. Dig. § 703.*]

3. WILLS (§ 718*)—ELECTION—OPERATION AND EFFECT.

Where a legacy and an annuity were in lieu of any claim of the legatee for wages for services rendered the testator, the acceptance by the legatee of part of the legacy was a waiver of all her claim for services.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 1717–1721; Dec. Dig. § 718.*]

4. PAYMENT (§ 63*)—PLEADING—ADMISSIBILITY OF EVIDENCE.

A plea of payment renders admissible evidence of payment, in any form, as by any agreement between the parties, which would operate as an extinguishment of the debt, such as a provision by will which has been accepted.

[Ed. Note.—For other cases, see Payment, Cent. Dig. §§ 152–161; Dec. Dig. § 63.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Appeal from Special Term, New York County.

Action by Warren P. Newcomb, as executor of J. Victor Newcomb, deceased, against Jeanne La Roe. From a judgment for defendant, plaintiff appeals. Modified and affirmed.

See, also, 155 App. Div. 894, 139 N. Y. Supp. 1135.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGHLIN, CLARKE, and SCOTT, JJ.

D. Cady Herrick, of Albany (George Bell and Benjamin Patterson, both of New York City, on the brief), for appellant.

Nelson L. Robinson, of New York City, for respondent.

LAUGHLIN, J.   This is an action brought by the executor of J. Victor Newcomb, deceased, for the construction of the will of the latter with respect to the effect, on a claim for services made by the defendant against the estate, of a legacy to her and an annuity for her in the will, to have the amount of her claim for services adjudicated in the event that it shall be decided that the acceptance of the legacy and annuity does not not constitute a payment of her claim for services.

The testator died November 2, 1911.   On the 10th day of June, 1912, the defendant presented to the executor a duly verified claim against the estate for professional services as nurse to the testator from April 27, 1907, to April 29, 1908, at $30 per week, and from the last-mentioned date to November 2, 1911, as nurse and housekeeper at $40 per week, aggregating $8,880, less a credit of $1,300.47 for "payments made on account." By a formal notice to the attorney for the defendant on the 10th day of July, 1912, the executor offered to allow her claim if she would release all claims as legatee and annuitant under the will, and in the event of her refusal so to do he rejected it. The action was commenced on August 14, 1912.

The testator had a wife and son, but they did not live with him. He maintained a separate household with several servants where he resided alone. On April 26, 1907, when he was about 60 years of age, he met with an accident by which one of his arms was broken, and on the same day the defendant, who was a professional nurse, was summoned to care for him, and she remained a member of his household until he died, administering to him at first as a nurse and later on in the capacity of housekeeper and nurse. The will was executed on June 4, 1910, and paragraph fourth thereof is as follows:

"Should Jeanne La Roe, registered nurse, remain in my employ as professional nurse, as she has done since my severe accident and illness in 1907, I give and bequeath to her four thousand ($4,000) dollars, and a net income of fourteen hundred ($1,400) dollars, per annum, to be paid by my executors in quarterly installments, and the principal of the fund necessary to produce such net income, shall be a first lien and mortgage upon my property. My relatives and close friends, herein mentioned and otherwise, know her fidelity and capacity in acting also, as housekeeper for me, thus enabling me to receive and entertain them and others and promoting thereby, my welfare, comfort and contentment, for I would not otherwise have been able to look after serv-

ants and the running of an establishment without a capable and honest woman, for no man can perform such duties so well as a woman can, in my estimation. This bequest attaches only, however, in case of her caring for me as a professional nurse, in my old age, until my death. And in order to carry out said bequest, I give to my executors herein nominated, or those who qualify, in trust in money derived from my estate, an amount which, in the opinion and discretion of my executors, will produce, when safely invested by them, an income equal to fourteen hundred ($1,400) dollars, net per annum, to be paid by said executors quarterly to said Jeanne La Roe for her natural life for her sole use, contingent upon her remaining with, and caring for me during my life, as above mentioned, and my executors shall act for her as trustees until they shall select a trust company to succeed them as trustee, thereby relieving them as trustee, and said trust company shall pay to her said sum of fourteen ($1,400) dollars, per annum, in quarterly payments, during her life, and upon her death, the principal of said fund shall revert to my residuary estate."

The defendant claimed both the legacy and the annuity and has received, accepted, and retained part of each. By a second amended answer, her last pleading, the defendant admitted payments made to her by the testator by checks and cash on account of wages aggregating $51.13 in the year 1907, $869.64 in 1908, $280.75 in 1909, $576.38 in 1910, and $234.88 in 1911, aggregating in all the sum of $2,012.78, which is over $700 more than she credited in her claim. She likewise admitted, by the same pleading, that she received from him during the entire period the sum of $75.50 for household expenses, and gifts in cash and checks aggregating $289.90, and that he paid out on her account $1,265.06 and gave her one check for $20, for a bond coupon and three checks aggregating $30, which she claims she cashed and gave the proceeds to him. She alleges in the same pleading that she advanced to the testator for household expenses various sums of money aggregating $668.28, and in checks and cash for other purposes $680, which includes the $30, proceeds of checks cashed for him, and that she delivered to him two bond coupons aggregating $45, which includes the one for which she received his check for $20.

There is no evidence of an express agreement between the testator and defendant with respect to her wages; but another nurse, who was called first to attend the testator and remained for a time as day nurse after defendant came and was on duty nights, testified that defendant told her the testator agreed to pay her $28 per week.

The trial court decided that the legacy and annuity given to the defendant by the will were not intended as a payment of any claim she might have against his estate for services, and decreed that she is entitled to the annuity as provided in the will, and awarded judgment in her favor for the balance unpaid on the legacy, and for the balance found by the court to be owing to her, on the theory that her services were worth $30 per week, which plaintiff conceded to be the reasonable value thereof, for the entire period. The total amount earned by her during that period on the basis of $30 per week would be $7,054.28. There was no express evidence, other than the concession made in her answer, with respect to the amount she was

paid .to apply on her services, except that two of the checks .introduced in evidence by the plaintiff drawn by the testator to the order of the defendant, aggregating $135, showed on the face thereof that they were on account of salary. In arriving at the balance owing to the defendant for services, the court did not take the amount which she concedes was paid to apply on her services, but deducted $2,010.-06, which is $2.72 less than the amount so conceded. That amount was arrived at by accepting, without other proof, her answer wherein she purports to set forth the state of the account between herself and the testator, charging herself with moneys received and crediting herself with moneys which she claims to have disbursed for his account. It was not claimed in behalf of the plaintiff on the trial that defendant did not disburse the amounts as claimed by her; but it was there contended, and is contended here, that it is to be inferred that she received from the testator the amounts she disbursed over and above the amounts that she admits she received. The record indicates that during the trial the court intimates that, if it became necessary to consider whether the defendant was entitled to charge her disbursements, all questions with respect thereto would be determined on a reference after an interlocutory judgment. The court, however, disposed of the case without a reference or an interlocutory judgment.

[1, 2] The learned counsel for the plaintiff contends therefore that his client has been prejudiced by being deprived of an opportunity to offer evidence bearing on the amount of money received by the defendant from the testator. In the view we take of the case, we do not deem it necessary to decide that question. Aside from the provisions made for her in the will, it is inconceivable on the evidence that defendant would have allowed her claim against the testator to accumulate to the extent claimed, or that he would have permitted it. It is not probable that he would make gifts to her from time to time by checks and cash if he was indebted to her for wages. He left an estate valued at about $70,000. During the entire period in question his monthly balance in a single bank in the city of New York in which he had a deposit account subject to checks ranged between $4,709.31 and $23,091.66, and on October 30, 1911, three days before his death, was $11,142.08, and on November 29, 1911, $10,642.08; and at times he had additional funds on deposit in other banks. He appears to have been accustomed to pay his bills promptly, and he paid the wages of all other servants regularly, and the only claims against his estate, other than that of the plaintiff, were for wages of servants during the month in which he died. The defendant within a year after she entered the employ of the testator became his housekeeper and presided at his table and gradually attained a position of trust and confidence with him, and he depended upon her not only for the running of his household but for looking after and paying his accounts connected therewith. The disbursements she made for him were mainly by his checks, but some of them were by cash received from him, and the evidence shows that he always carried money with him. He not only depended upon her, as stated, but he became very much at-

tached to her, and he wanted her near him, or within call all the time, or, as stated by a visitor at the house, he was timid and wanted her "within call night and day," and when he was not accompanied by relatives or friends she was his companion driving. Although she entered his employ as a servant, their relations soon became and continued to the end more like those of a fond father and devoted daughter.

The defendant concedes that some of the payments made to her for wages were by cash. It is highly probable, if there was not an understanding between them with respect to compensating her by his will, that he made other payments of the amount due her from time to time in the same manner. She would have the court believe that during the first 15 months of her employment, during which time she would be entitled to receive, on the basis of $30 per week, about $2,-000, she actually received only $51.13 to apply on her wages, and that, representing this man who was always in funds and with such a large bank balance, she was advancing moneys of her own from time to time for his household expenses, for which he did not reimburse her. Pending this action, the plaintiff sued the defendant for the sum of $1,265.06, alleged to have been paid out and expended by the testator for her account. That included the sum of $767.50 paid for a bond for her. This was not denied by her, but she pleaded payment and alleged the pendency of this action as a bar and that in her account annexed to her answer in this action she credited the plaintiff with said amount. The other action has been tried and is pending decision. The claims involved in that action are not involved in this. On that trial, under her plea of payment, she showed that she gave the testator her check for $500. It appears by the testimony of the cashier of a firm of brokers given on the trial of this action that her said check was used by the testator in purchasing the bond for $757.-50, which by her account annexed to her answer herein defendant admits having received from him. At the times of the expenditure of said moneys by the testator for the defendant, and when she gave him her said check, he was, according to the claim on which she has recovered in this action, indebted to her in the sum of $1,400 or more. It is to be inferred from the evidence that she was carrying a policy of insurance on which she was required to pay an annual premium of $85.75. On the 4th of March, 1909, and the 4th of March, 1911, she paid these premiums with the testator's check for that amount. The premium due on March 4, 1910, was paid with her own check, but at that time she made her account, on which the check was drawn, good by depositing to her a check drawn by the testator payable to her for $80. These three checks received by her from the testator are credited in her account as payments for wages. It is a reasonable inference that in making out checks for the defendant to apply on her wages the testator would have drawn them for the amount which he owed her at the time.

She does not claim to have kept any account at the time of the amount owing to, or received by, her for wages; but she claims to

have kept an account of the disbursements she made for the testator. Benjamin Patterson, who was the attorney for the testator, testified that on the 11th day of May, 1911, which was less than six months before the death of the testator, the defendant reported to him that the testator had had a serious attack and she was afraid he would die, and asked him whether she could "recover a claim" which she had against the testator "for $1,250 wages" in the event that the widow should contest the will and succeed, to which he replied "Why, certainly, and why have any such question; if he owes you $1,250, and you ask him for it, he will pay it to you," and that she said she would. She merely denies that she specified the amount of her claim to Patterson at that time. He also testified that the defendant at that time knew the provisions in the will made for her benefit. The learned counsel for the appellant argues that this indicates that the defendant at that time had conceived the idea of asserting the additional claim for $10 a week as housekeeper which would approximate the amount she claimed, and that that was the claim to which she referred. We need not stop to inquire whether that be so or not, for we think the testimony of Patterson should have been accepted, and it, at least, indicates that she then, in effect, conceded that she had been paid far more on account of services than she had admitted by her pleading, or that there was an understanding that she was to be compensated therefor by the provisions of the will for her benefit. Patterson further testified that before the will was probated, and before a settlement was made with the widow of the testator, the defendant said that, "if the will was sustained, she would have no claim against the estate," and that at one time after the death of the testator she said to him that if she "got her annuity she had no claim."

The defendant did not specifically deny these conversations as narrated by Patterson, but gave a different version of her conversation with him which, perhaps, indirectly denied them. His testimony is, in the circumstances, highly probable, and should be accepted. It is corroborated by the testimony of the plaintiff, as will be seen presently. The plaintiff testified that a day or two after the funeral defendant asked him, "If the will is broken, shall I have to sue for my wages?" to which he replied that he did not expect the will to be broken, and that a few days later she asked him what she could do to help him, and he replied that she could help him "the most" by making out her claim for back wages, and that she then stated that she was unable to make out her claim until she saw the testator's checks, and also said, "if I receive my legacy, I shall have no claim against the estate." The defendant denied that she told the plaintiff that if she received her legacy she would have no claim against the estate, and testified that he asked her whether she would present her claim if she received her legacy and annuity, and that she answered that she did not know, and that he repeated the question, and she made the same reply, adding, "I suppose—" and began to cry and did not finish the sentence; whereupon he said that Patterson thought that the testator intended the legacy and annuity to be in payment of her

claim, and that she was crying and said, "I suppose— " without adding anything further.

The plaintiff, who is referred to as "Col. Newcomb," was the testator's cousin and was appointed executor of his will and was made sole residuary legatee. The defendant admitted that shortly after the death of the testator she said to Patterson:

"My filing my claim depends entirely on Mr. Newcomb's estate. If there is plenty there, if there is sufficient to pay Col. Newcomb handsomely for all his trouble, I shall file my claim and get every cent that is my due. I am dealing with Mr. Newcomb's friends and relatives, and not with Mr. Newcomb; and I intend to get every cent that belongs to me."

She further testified that before she made any claim for services Patterson suggested to her that there was no reason why the plaintiff as residuary legatee should have the surplus estate which would amount to $15,000 or $20,000, and that she should put in a claim for the entire period of her employment, and that she would have no trouble in proving her services, and that would take an assignment of her claims as security for money to be loaned to her in case the widow should succeed in a contest over the will, and her legacy and annuity "were thrown out"; that in March, 1912, she asked Patterson, in effect, whether the law required the payment of the debts before the widow had her third, to which he replied in the affirmative, and she then suggested that she present her claim, saying, "And then, if it goes against us, Col. Newcomb and I can fix that up together." It is proper to say at this point that Patterson did not take an assignment of her claim and denied the interviews as narrated by the defendant, but he admitted that he loaned her $100 per month pending the probate of the will, and he testified that he advised her that he "could not pass any claim unless it was a just claim." It is important at this point to note that the defendant did not present her claim until she was advised that a settlement had been arrived at with the widow of the testator, so that there was no further danger of a contest over the will.

The will was drawn by Patterson, who testified that he had previously drafted wills for the testator, only one of which was executed, but that the defendant was not mentioned in any of them, and that after the execution of the last will he discussed its provisions with the defendant, and she said she was pleased that the amount she was to receive therein was increased over the amount given her by "the other will." She did not deny this. There is no other evidence relating to the execution of a former will. The testator may have executed a former will making provision for defendant, as indicated by her said statement; but in any event it is fairly to be inferred from her statement that he represented to her that he had done so. All of the evidence has been examined and considered in the light of the arguments of counsel thereon, but we do not deem it necessary to state it further.

I am of opinion that the evidence establishes two defenses to defendant's claim for services:

First. The learned counsel for the plaintiff argues with much plausibility, and force, on the authority of Conkling v. Weatherwax, 181 N. Y. 258, 268, 73 N. E. 1028, 2 Ann. Cas. 740, in view of the form of defendant's pleading by which she sets forth an account of moneys received and disbursed for appellant, as well as moneys received to apply on her wages and also moneys advanced for his account, and claims as a balance due and owing the difference between her wages for the entire period at the rates claimed by her and the total amount received not only to apply on wages but for wages and all other purposes, after deducting therefrom all disbursements which she claims to have made on his account, that the defendant has assumed the burden of proof as to the payments made to apply on her account for wages. It is immaterial, however, who had the burden of proof, for the reason that, if there was no change from the original contractual relations between the testator and the defendant, the evidence, viewed in the light of the authorities applicable to such claims against an estate, fairly shows that she was paid in full, or at least substantially so, and down to within a comparatively short period of his death, the same as appears with respect to his other servants and creditors. See McDermott v. Conlon, 153 App. Div. 69, 137 N. Y. Supp. 1105; Lyon v. Smith, 142 App. Div. 186, 126 N. Y. Supp. 994; Reilly v. Burkelman, 149 App. Div. 548, 134 N. Y. Supp. 13; Steinau v. Scheuer, 15 App. Div. 5, 43 N. Y. Supp. 1112; Matter of Looram, 73 Hun, 177, 25 N. Y. Supp. 877; Steitz v. Priddis, 81 Hun, 229, 30 N. Y. Supp. 762; Bennett v. Austin, 5 Hun, 541.

[3, 4] Second. It is to be borne in mind that the testator was neither related to the defendant by blood, nor by marriage, and was under no moral obligation to make any provision for her in his will. The annuity he gave her approximates her annual earning capacity. According to her claim, he owed her for wages at the time he made the will about $2,252.15. It is evident that the defendant's admissions prior to presenting her claim tend to show that the defendant and the testator had prior to that time arrived at an understanding by which she was to make her home with him until his death, and that the legacy of $4,000 was intended to cover any indebtedness for wages then existing, or that might remain at the time of his death, and that by the annuity she would be provided for on substantially the same basis for the period of her life. The evidence gives rise to a presumption of a change in their contractual relations long before the will was made, by which she was to remain with him permanently and be compensated, over and above the moneys she might need to draw from time to time, by the legacy and annuity. Of course, if he failed to provide for her by his will, or revoked any will so providing for her, she would be entitled to recover for her services if she had not been paid in full. Here the provisions of the will relating to the legacy and annuity are preceded by the usual direction for the payment of debts which is ordinarily deemed sufficient to render the general rule, that a legacy to a creditor extinguishes an indebtedness which it equals or exceeds, inapplicable (Matter of Arnton, 106 App. Div. 326, 329, 94 N. Y. Supp. 471; Reynolds v. Robinson et al., 82 N. Y. 103, 107, 37 Am. Rep. 555; Wil-

liams v. Crary, 5 Cow. 368; Id., 4 Wend. 443, 447; 18 Am. & Eng. Enc. of Law, 769, 776); but this was not an unliquidated claim, and the legacy is payable at once and the annuity commences at once, and they far exceed the claim, which facts distinguish the case, on one important ground, at least, from Phillips v. McCombs, 53 N. Y. 494, and both the legacy and annuity expressly relate to the services and are conditioned upon the rendition thereof to the end.

The will, construed in the light of the evidence of the relations between the testator and the defendant as disclosed by the evidence shows, I think, that the testator intended the legacy and annuity not only as a bounty, but also as payment in full of any unpaid claim she might have for services for caring for him until the moment of his death, which is one of the reasons assigned in the will for those provisions for her benefit. That is the consideration which he says moved him to give her the legacy and annuity, and they were conditioned upon her performing the services as contemplated by him. By accepting part of the legacy and annuity she has irrevocably elected to waive any claim she might otherwise have had for services. The plea of payment renders evidence of payment in any form, as by any agreement between the parties which would operate as an extinguishment of the debt, such as provision by will which has been accepted, admissible. Farmers' & Citizens' Bank v. Shuman, 33 N. Y. 69; McLaughlin v. Webster, 141 N. Y. 76, 35 N. E. 1081; Uvalde Asphalt Paving Co. v. Nat. Trading Co., 135 App. Div. 396, 120 N. Y. Supp. 11.

These views require a reversal of findings 11, 12, 14, and 20, and the substitution of a finding of payment, and the reversal of the first conclusion of law and that part of the third conclusion of law to the effect that defendant is entitled to recover the balance owing for services, and the conclusion that defendant is entitled to recover costs and an additional allowance, and the substitution of conclusions that the defendant is not entitled to recover for services, otherwise than by recovering the legacy and annuity, and that plaintiff is entitled to recover costs to be taxed; and the judgment is modified accordingly, with costs to appellant. All concur.