■ In the Matter of the Estate of CHARLES H. REVSON, Deceased. SIMON H. RIFKIND et al., as Executors of CHARLES H. REVSON, Deceased, et al., Respondents; JOHN C. REVSON, Appellant-Respondent; HENRY G. MILLER, as Guardian ad Litem for JILL REVSON, et al., Respondents-Appellants. — In a proceeding for an intermediate judicial settlement of the account of the executors of the estate of Charles H. Revson, deceased, (1) John C. Revson appeals from so much of an intermediate decree of the Surrogate's Court, Westchester County (Brewster, S.), dated July 22, 1980, as (a) required the executors of the estate of Charles H. Revson to establish from the principal of said estate an irrevocable trust of $200,000, with interest thereon at the rate of 6% per annum from May 1, 1972, for the benefit of Jill Revson in accordance with the terms of a separation agreement dated November 6, 1970, between John C. Revson and Ricki Revson, (b) provided that the identity of the trustee and the precise terms of the trust are to be determined by the Surrogate's Court, Westchester County, at the foot of the intermediate decree, upon application, and (c) gave effect to the agreement, dated November 4, 1976, by John C. Revson, to reimburse the decedent's estate for the obligation to establish the trust described above; (2) Henry G. Miller, as guardian ad litem of Jill Revson, appeals from so much of the same intermediate decree as (a) limited the interest accruing on the irrevocable trust to 6% per annum from May 1, 1972 and (b) dismissed his claim under paragraph 10(d) of the separation agreement between John C. Revson and Ricki Revson; and (3) the Charles H. Revson Foundation, Inc., appeals from so much of the same intermediate decree as (a) directed the executors to establish the above-mentioned irrevocable trust for the benefit of Jill Revson and (b) failed to direct (i) that the estate be indemnified by, and have judgment over against, John C. Revson for any amount expended or to be expended under decedent's guarantee of John C. Revson's performance under the separation agreement, (ii) that the estate sequester these amounts from the income (and ultimately from the principal, if necessary) of the trust created for the benefit of John C. Revson under paragraph TENTH of decedent's will and (iii) that, if the balance due to said trust from the estate is insufficient to satisfy any judgment which the estate may recover against John C. Revson, the executors recover such deficiency from the trustees of said trust or from any other person or persons to whom the executors have already distributed assets bequeathed to said trust or otherwise to John C. Revson or for his benefit. Henry G. Miller, as guardian ad litem of Jill Revson, also appeals from so much of a supplementary decree of the same court, dated June 5, 1981, as provided that the $200,000 trust fund to be deposited with the trustee in accordance with the intermediate decree dated July 22, 1980 be augmented by interest at the rate of 6% per annum from May 1, 1972 to the date of payments. Intermediate decree and supplementary decree affirmed insofar as appealed from, without costs or disbursements. On November 6, 1970, John C. Revson (the decedent's son) and Ricki Revson entered into a separation agreement which was incorporated but not merged in their subsequent divorce decree. Paragraph 10(c) of that agreement obligated John C. Revson to establish a trust of $200,000 on or before December 31, 1971. The terms of the trust, set forth in Exhibit C to the separation agreement, included monthly income payments of $1,000 to Ricki Revson for the support,

maintenance and education of Jill Revson, their daughter (custody of whom was given to Ricki), until Jill should reach age 21, marry or die, after which the trustee was to pay Ricki Revson, in monthly installments, the lesser of the net annual income of the trust or $12,000 per annum. Any annual income in excess of $12,000 was to be paid to Jill. If Ricki were to have died by the time Jill reached age 21, Jill was to receive one third of the principal at that time, followed by half the remaining principal upon reaching age 25 and the remainder upon reaching age 30. By its terms, the trust was to terminate upon the later of (1) Ricki's death or remarriage or (2) the attainment of age 30 by Jill. The terms of the proposed trust did not specify the person to whom the trust income were to be paid if Ricki died before Jill reached 21 years of age. Paragraph 10(d) of the separation agreement provided for John to pay Ricki $1,000 per month for the support, maintenance and education of Jill until establishment of the trust provided for in paragraph 10(c). Concurrently with the separation agreement, the decedent executed a guarantee which recited that he would guarantee to Ricki Revson, John Revson's performance of his obligations under paragraphs 10(c) and 10(d) of the separation agreement. The guarantee further provided: "1. This Guaranty is made for the benefit of the Wife [Ricki Revson] and Jill. 2. This Guaranty shall survive my death and shall constitute a charge on my estate provided, however, that my estate may discharge its obligations hereunder by purchasing suitable annuities or establishing the trust provided for in paragraph 10(c) of the Separation Agreement. 3. This Guaranty shall cease and be of no further force and effect upon the purchase of suitable annuities or the establishment of the trust provided for in paragraph 10(c) of the Separation Agreement." John Revson never established the trust in accordance with paragraph 10(c) of the separation agreement. He did pay Ricki $1,000 per month as required by paragraph 10(d) until her death in April, 1972. Since Ricki's death, Jill, who is under the age of 21 years, has resided with John. Charles Revson's will, dated August 2, 1974, provided for Jill in paragraph FIFTH, *inter alia,* by establishing a testamentary trust in the principal amount of $1,150,000 in the event that she had not attained the age of 30 years at the time of his death. Jill is to receive whatever amounts of income or principal the trustees deem appropriate. Upon reaching age 30, Jill is to receive one half the principal; upon reaching age 35, she is to receive the remainder. Charles Revson died on August 24, 1975 and his will was admitted to probate shortly thereafter. In 1977, Jill Revson, by her guardian ad litem, filed a claim against the estate for the creation of a $200,000 trust for her benefit, pursuant to the separation agreement. The executors rejected the claim. The guardian filed similar objections to the account and the executors commenced this special proceeding for judicial settlement of their first intermediate account. After all interested parties had an opportunity to answer, the Surrogate ruled that John Revson remained obligated to establish the trust pursuant to paragraph 10(c) even after the death of his wife and that upon his failure to do so, the decedent's estate was liable under the guarantee for the $200,000 trust. The testamentary trust for Jill's benefit did not fulfill either John Revson's obligation under paragraph 10(c) of the separation agreement or the decedent's obligation under the guarantee, the Surrogate held, because the relationship of the decedent and Jill was not one of debtor and creditor. The decedent could have easily indicated in the will his intention that the testamentary trust for Jill's benefit satisfy his obligations under the guarantee. The Surrogate therefore ordered the executors to establish a trust for Jill's benefit pursuant to paragraph 10(c) of the separation agreement, subject to reimbursement by John Revson, of $200,000 with interest thereon at the rate of 6% per annum from May 1, 1972 (the date John ceased paying the $1,000 per

month pursuant to paragraph 10[d] of the separation agreement). He rejected Jill's claim for $1,000 per month from May 1, 1972 until such trust shall be established because Ricki was the intended recipient of such payments and Jill therefore did not have standing as a creditor to assert her claim. The supplementary decree set forth the terms of the trust to be established for Jill's benefit. On appeal, the executors and John Revson contend that John Revson's obligation to establish the trust pursuant to paragraph 10(c) of the separation agreement was extinguished by the death of Ricki Revson. They claim that the primary purpose of the trust was to assist Ricki Revson in supporting Jill, but since Ricki's death John became the custodial parent whose common-law obligation to support the child supersedes any provisions of the separation agreement (see *Pollock v Pollock,* 53 AD2d 597, 598; *Matter of De Saulles,* 101 Misc 447, 460, 464; *Matter of Robinson,* 17 Abb Prac 399). John Revson also argues that the lack of any provision in the terms of the trust for the payment of income upon the contingency of Ricki's death before Jill reached the age of 21 indicates that the trust income was to have been for Ricki's benefit. We disagree. The provision in the prescribed terms of the trust that it would terminate at the later of Ricki's death or Jill's attaining the age of 30, demonstrates that the parties to the separation agreement contemplated the contingency which occurred, namely, Ricki's death before Jill was 21. The provision that Jill was to receive any trust income in excess of $12,000 per year after she reached 21 and if Ricki were still alive indicates that the parties considered Jill a beneficiary in her own right and not just an incidental beneficiary through Ricki as *cestui que trust.* The omission to specify the person to whom income payments were to be made if Ricki predeceased Jill before Jill reached age 21 should not deprive her of this income. A valid trust may exist even though the direction for the payment of income by a trustee to a beneficiary is implied rather than expressed (*Matter of Hinman,* 22 Misc 2d 655, 656). It must be presumed that a settlor " 'did not intend by mere omission to leave any interest undisposed of' " (*Matter of Cowles,* 22 AD2d 365, 374, affd 17 NY2d 567). Accordingly, we hold that John Revson remained obligated to establish the trust required by paragraph 10(c) of the separation agreement after Ricki's death, and imply a term therein that if Ricki predeceases Jill before Jill reaches 21 years of age, the trustee is to pay the trust income directly to Jill or her guardian. John Revson, the executors and the Charles H. Revson Foundation, Inc. (the residuary legatee) next contend the testamentary trust established for Jill's benefit by the decedent's will has fulfilled John Revson's obligation under the separation agreement. The guardian disagrees, adopting the position taken by the Surrogate: that if decedent had intended the legacy to fulfill any prior obligation, he would have recited such intention in the will. The guarantee signed by decedent recited, *inter alia,* that it was for Jill's benefit. As a third-party beneficiary of the guarantee, Jill became a creditor of her grandfather. A legacy from a debtor to a creditor will be considered in satisfaction of the debt if the testator intended it to be (see *Newcomb v La Roe,* 160 App Div 819, affd 218 NY 682; *Matter of Herb,* 163 Misc 441; *Matter of Baker,* 89 NYS2d 56, 58). Variations between the sizes of the legacy and the debt do not preclude a finding of intent that one satisfy the other (see *Matter of Herb, supra; Matter of Runyon,* 201 Misc 464; *Matter of Miller,* 12 Misc 2d 443). However, where the language of the will does not affirmatively show the claimed intention, the burden of establishing such intention is on the party seeking to effectuate it (see *Brill v Wright,* 112 NY 129, 136). This was not done here. As the Surrogate pointed out, if the decedent had intended to fulfill his obligation under the guarantee, or John's obligation under the separation agreement, by means of the testamentary trust, he could

easily have recited such intent in his will. However, once the decedent's estate does establish the trust pursuant to its obligation under the guarantee, it will be entitled to reimbursement from John, the principal (see *Bank of New York, Albany v Hirschfeld,* 59 AD2d 976, app dsmd 44 NY2d 732; *Leghorn v Ross,* 53 AD2d 560, affd 42 NY2d 1043, mot for rearg den 43 NY2d 835; *Thompson v Taylor,* 72 NY 32). The guardian ad litem contends Jill may also enforce paragraph 10(d) of the separation agreement, which provided for payments to Ricki of $1,000 per month until John Revson established the trust required by paragraph 10(c). The decedent undertook to guarantee such payments, which were included in the guarantee. As a named third-party beneficiary of both the separation agreement and the guarantee, Jill has standing, especially in the absence of her mother, to enforce this claim (see *Forman v Forman,* 17 NY2d 274, 280; *Matter of Chilson,* 28 AD2d 766; *Bethune v Bethune,* 96 Misc 2d 507, 509-510, revd 60 AD2d 588, revd 46 NY2d 897). On the merits, however, Jill may not recover under paragraph 10(d) of the separation agreement. The guardian contends that Jill is entitled to interest on the $200,000 trust corpus from December 31, 1971, the date by which such trust was to have been established. Since Ricki actually received monthly payments pursuant to paragraph 10(d) through April, 1972, the Surrogate properly awarded interest on the proposed trust corpus from May, 1972 until the date the proposed trust is established. To also allow Jill to collect $1,000 per month from the time of John's last such payment to the time the testamentary trust was established by reason of decedent's death would be to permit Jill a double recovery. We also reject her claim that the Surrogate erred in awarding simple interest at the legal rate. Compound interest may be awarded, but only where the trustee has been guilty of bad faith (see *Brown v Knapp,* 79 NY 136, 145). No such bad faith is alleged here. While the court could have awarded interest at other than the legal rate (see CPLR 5001, subd [a]), we cannot say the Surrogate abused his discretion in declining to do so on the facts of this case. Finally, we hold the estate liable under the guarantee for the payment of such interest. A guarantor must pay the "reasonable expenses legitimately incurred in consequence of * * * default" by the principal (*Thompson v Taylor,* 72 NY 32, 34, *supra*). Damiani, J. P., Titone, Mangano and Gibbons, JJ., concur.