**Luiz Eduardo Fontes WILLIAMS,**
**Plaintiff,**

v.

**J.P. MORGAN & CO.**
**INCORPORATED,**
**Defendant.**

**No. 00 CIV.6321(VM).**

United States District Court,
S.D. New York.

May 7, 2002.

---

R. Scott Greathead, Howe & Addington, L.L.P., New York City, for Luiz Eduardo Williams.

Bradley I. Ruskin, Proskauer, Rose, L.L.P., New York City, for J.P. Morgan & Co. Inc.

David Spencer, New York City, for Maria Thereza Fontes Williams.

## DECISION AND ORDER

MARRERO, District Judge.

Plaintiff Luiz Eduardo Fontes Williams ("Williams") is a remainderman of an inter vivos trust (the "Trust"). Invoking the Court's jurisdiction under 28 U.S.C. § 1332, Williams filed suit against the trustee of the Trust, defendant J.P. Morgan & Co. Incorporated ("Morgan"), seeking damages for a breach of fiduciary duty and an accounting. By leave of the Court, the parties filed cross-motions for summary judgment on the issue of damages calculation. For the reasons set forth below, the Court grants Morgan's motion in part, denies Morgan's motion in part and denies Williams's motion.

## I. BACKGROUND

The parties do not dispute the facts for the purposes of this motion, which they assert concerns only issues of law.[1] According to Williams's complaint, the Trust was created in 1958 with a corpus of approximately $500,000. Morgan, a New York corporation, was appointed the trustee. Williams's mother ("Mrs.Williams"), a citizen of Brazil, was identified as the income beneficiary. By its terms, upon Mrs. Williams's death, the Trust's assets were to be distributed to her surviving descendants. Williams, also a citizen of Brazil, is a descendant of Mrs. Williams, as is his brother Anthony Forrest Williams, and they therefore are the remaindermen of the Trust.

In or about November 1970, the assets of the Trust had a fair market value of $1,000,000. Morgan learned that a bilateral income tax treaty between the United States and Brazil was being negotiated (the "Contemplated Treaty"). Morgan consulted its counsel to determine how to avoid the adverse tax consequences for the income beneficiary that would result if the treaty were ratified by both nations. To this end, Morgan also liquidated the

---

1. For purposes of its motion for summary judgment, Morgan accepted Williams's allegations stated in the complaint as true. Williams, too purports to rest his motion for summary judgment on the claims set forth in his complaint. Morgan objected. Morgan is correct that all reasonable inferences must be drawn in favor of the party against whom a motion for summary judgment is made. (*See infra*, discussion at Part II.A.) Nevertheless, because the same issues are raised by Morgan's motion for summary judgment, the Court may address the arguments raised by both parties. For purposes of this motion, then, the parties agree that there is no genuine issue of material fact concerning the facts pled by Williams. Accordingly, the matters summarized herein are derived from Williams's complaint and the excerpts of the of the Disposition of Luiz Educardo Fontes Williams, dated January 15, 2002, which are attached as Exhibit A to the Supplemental Affirmation of Peter J.W. Sherwin, dated as Exhibit A to the Supplemental Affirmation of Peter J.W. Sherwin dated January 31, 200 ('Williams Dep').

Trust's stock portfolio and reinvested the proceeds in cash and tax-exempt bonds (the "1970 Investment"). On January 18, 1971, Mrs. Williams ratified Morgan's 1970 Investment decision. Morgan did not seek the remaindermen's ratification. Morgan did not alter the 1970 Investment at any date thereafter.

The United States and Brazil never entered the Contemplated Treaty. Williams thus claims that by the mid–1970's it was clear that the Contemplated Treaty no longer posed a risk to the income beneficiary's interests. At that point, Williams claims that the justification for the trustee's investment in tax-exempt bonds disappeared and that Morgan had a duty to diversify the investment and consider the remaindermen's interests in the Trust. Williams does not claim that Morgan engaged in any fraud or self-dealing or misconduct apart from the negligent and imprudent failure to invest and/or diversify trust assets since the mid–1970's. Currently, by Williams's calculation, the trust assets are valued at "less than $800,000." (Compl. at ¶ 19.)

## II. *DISCUSSION*

### A. *Standard of Review*

"It is axiomatic that federal courts are courts of limited jurisdiction and may not decide cases over which they lack subject matter jurisdiction." *Lyndonville Sav. Bank & Trust Co. v. Lussier*, 211 F.3d 697, 700 (2d Cir.2000). The federal diversity jurisdiction statute provides federal courts with subject matter jurisdiction over state law claims if the amount in controversy exceeds $75,000 and the parties are "citizens of a State and citizens or subjects of a foreign state." 28 U.S.C. § 1332(a). The claims at bar meet the requirements for diversity jurisdiction because Williams is a citizen of Brazil and Morgan is a New York corporation. In addition, the amount in controversy exceeds $75,000.

A federal court must apply state "substantive" law to a diversity case. *See Gasperini v. Center for Humanities, Inc.*, 518 U.S. 415, 427, 116 S.Ct. 2211, 135 L.Ed.2d 659 (1996) ("[F]ederal courts sitting in diversity apply state substantive law and federal procedural law."); *Erie R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Here, New York State substantive law applies.

A federal court sitting in diversity must follow the law as enunciated by the highest court of the state, here, the New York Court of Appeals. *See Calvin Klein Ltd. v. Trylon Trucking Corp.*, 892 F.2d 191, 195 (2d Cir.1989). In the absence of a ruling by the Court of Appeals, a federal district court is not bound by the opinions issued by New York State's lower courts. *See id.* (citing *Plummer v. Lederle Laboratories*, 819 F.2d 349, 355 (2d Cir.1987) and *Stafford v. International Harvester Co.*, 668 F.2d 142, 148 (2d Cir.1981)). Indeed, a federal court should reject any lower court's ruling that is inconsistent with a Court of Appeals decision. *See Levin v. Tiber Holding Corporation*, 277 F.3d 243, 253 (2d Cir.2002) (citing *First Investors Corp. v. Liberty Mut. Ins. Co.*, 152 F.3d 162, 165 (2d Cir.1998)). Only "where the substantive law of the forum state is uncertain or ambiguous, the job of the federal courts is carefully to predict how the highest court of the forum state would resolve the uncertainty or ambiguity." *Travelers Ins. Co. v. 633 Third Assocs.*, 14 F.3d 114, 119 (2d Cir.1994).

In matters of "procedure," however, federal courts must apply federal law. *See Gasperini*, 518 U.S. at 427, 116 S.Ct. 2211; *Erie*, 304 U.S. at 64, 58 S.Ct. 817. As such, a court reviews a motion for summary judgment under the federal standard of review. *See Gasperini*, 518 U.S. at 427, 116 S.Ct. 2211; *Com/Tech Communication Technologies v. Wireless Data Systems, Inc.*, 163 F.3d 149 (2d Cir.1998).

Summary judgment is appropriate only when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits" demonstrate an absence of any genuine issue of material fact and "the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). To grant the motion, a Court must determine from the record before it that a reasonable trier of fact would not be able to find in favor of the non-mover. *See Brady v. Colchester*, 863 F.2d 205, 211 (2d Cir.1988). In considering the motion, the evidence is viewed in the light most favorable to the non-moving party; reasonable inferences and factual conflicts are resolved in his favor. *See Cruden v. Bank of New York*, 957 F.2d 961, 975 (2d Cir.1992).

Here, based on Williams's pleading, the parties' cross-motions largely raise a legal question regarding the availability of damages under New York law. Accordingly, the factual record before the Court is brief. The lack of factual detail does not prevent the Court from addressing the discrete legal issue before it. However, the Court concludes that at this stage of the litigation, it would be premature to address certain issues involving the exercise of the Court's discretion.

**B. *Calculation of Damages***

Williams clearly bases his claims against Morgan on "negligent and imprudent failure to properly invest and diversify the assets of [the] Trust." (Compl. at ¶ 19.) Williams asserts his first claim for relief on the theory that Morgan's "failure to diversify and prudently invest the assets of [the] Trust constitutes a breach of its fiduciary duty to the remaindermen."[2] (Compl. at ¶ 21.)

The question before the Court is, what is the proper measure of damages to which Williams would be entitled should he prevail on the merits of his case. In its motion for summary judgment, Morgan asserts that damages are to be calculated on the basis of lost capital, only. By Morgan's calculation, the value of capital lost between August 15, 1974 and June 1, 2001 (the date of the accounting) is $3,114. However, depending on the valuation dates, a choice that is a question of fact to be determined at trial, the amount of lost capital may range from zero to $20,000. Morgan argues that Williams's claims are legally insufficient to qualify for any additional form of damages, including an award of interest.

In opposition to Morgan's motion, and as a cross-motion for summary judgment,

**2.** Morgan attempts to recast Williams's allegations as simply a claim for "negligent retention of assets". (*See* Memorandum of law in support of the Motion JPMorgan Chase Bank for Partial Summary Judgement on the Measure of Plaintiff's Compensatory Damages ('Def.'s Mem.') at 4.). Morgan seeks, as a consequence of recasting William's allegations, to preclude the imposition of any lost capital, discretionary compounded interest, a refund of commissions, lost profits or appreciation damages. (*See* Def.'s Mem., at 7–10) (citing *In re Rothko's Estate*, 43 N.Y.2d 305, 401 N.Y.S.2d 449, 372 N.E.2d 291, 298 (1977)); Memorandum of Law in Further Support of the motion of JPMorgan Chase Bank for Partial Summary Judgment on the Measure of Plaintiff's Compensatory Damages and in Opposition to Plaintiff's Cross–Motion for Partial Summary Judgment on Compensatory Damages and Interest ("Reply Mem."), at 13–18; (Plaintiff's Memorandum of Law in Opposition to Defendants' Motion for Partial Summary Judgment and in Support of Plaintiff's Cross–Motion for Partial Summary Judgment and in 18–20.) Morgan's attempt to recast the pleadings is misleading because, as set forth above, Williams alleges imprudent failure to invest Accordingly, Court proceeds by addressing William's claims as pled. *But see infra* note 3.

Williams claims that, if liability is established, he will be entitled to lost profits. By his calculation, had the Trust assets been properly diversified and invested during the mid–1970's the Trust would have assets of "at least" $21,000,000. This figure is based on a hypothetical re-investment of all Trust assets on January 1, 1975, and measuring the performance by the Standard & Poor 500 Index's performance. Accordingly, Williams asserts that his damages amount to approximately $20,000,000.

In the alternative, should he be due lost capital only, Williams asserts that he is entitled to compound interest on the lost capital amount. By Williams' calculation, the lost capital plus compound interest calculated at the statutory rate of 9 percent, *see* New York Civil Practice Law and Rules ("C.P.L.R.") §§ 5001 and 5004, would equal $6,680,000. Williams asserts an award of interest is appropriate because Morgan engaged in misconduct.[3] In addition, Williams seeks a return of all commission fees paid to Morgan since the mid–1970's and attorney's fees and costs.

### 1. *Lost Capital*

■ Morgan's motion for summary judgment seeks to establish that the ap-

propriate measure of damages based on Williams's claims is lost capital. Under New York law as construed by the state Court of Appeals, the measure of damages for negligent and imprudent failure to invest and diversify, which may also be styled as the negligent and imprudent retention of assets, is the value of capital lost.[4] *See In re Janes*, 90 N.Y.2d 41, 659 N.Y.S.2d 165, 681 N.E.2d 332, 339–40 (1997). The trust estate at issue in *Janes* was created with, and largely remained, Kodak stock. Over the years, the stock's value drastically dropped. *See id.* at 334–35. The beneficiaries brought suit against the trustees and the Surrogate's Court found that a trustee acted imprudently on the basis of "its negligent failure to diversify and for its inattentiveness, inaction, and lack of disclosure." *Id.* at 335.

The question on appeal was whether New York law permitted a fiduciary to be surcharged for imprudent management of a trust, and if so, what is the proper measure of such a surcharge. *See id.* at 335–36 and 339–40. The Court concluded that a surcharge was authorized and defined the formula to be used. *See id.* at 339 ("Where, as here, a fiduciary's imprudence consists solely of negligent retention of assets it should have sold, the measure

---

3. The Court cannot consider the factual misconduct alleged in Williams's motion papers, *see* Reply Memorandum of Law in Further Support of Plaintiff's Cross–Motion for Partial Summary Judgment at 9, because it is unsupported by affidavit or other form of admissible evidence. Fed.R.Civ.P. 56.

4. In the case at bar, Williams asserts negligent and imprudent failure to invest or diversify, which is the functional equivalent of negligent and imprudent retention of assets. During his deposition, Williams stated that: "From 1975 onwards my complaint is that Morgan negligently—was negligent in managing the trust, not diversifying the trust ...." (Williams Dep., at 92–93.) Williams stated that he does not claim that Morgan engaged

in any fraud, or invested in things for its own benefit to the detriment of the trustee. (*See id.*) The New York courts in *Janes* referred to the wrongdoing there at issue interchangeably as the trustee's "negligen[ce] in managing the estate's portfolio," "fail[ure] to diversify," *Janes*, 223 A.D.2d 20, 643 N.Y.S.2d 972, 974 (4th Dep't 1996), "negligent retention of assets," "imprudent retention," "negligent failure to diversify," "inattentiveness," "inaction" and "fail[ure] to exercise due care," *Janes*, 659 N.Y.S.2d 165, 681 N.E.2d at 335 and 339. Because these terms are identical to those used by Williams his allegations, appears that the substance and theories asserted by the plaintiff in *Janes* and by Williams in the case at bar are the same.

of damages is the value of the lost capital.").

Under the methodology the Court of Appeals enunciated, to measure lost capital a court must first determine the value of the asset on the date on which it should have been sold and then subtract either (a) the value of the asset at the time of the accounting or (b) the value of the asset at the time of the court's decision. *See id.* at 339. The court has discretion to award interest. (*See infra,* discussion at Part II.B.3.) A court also should subtract from an award of interest, if any, any dividends or income attributable to the asset during the time the asset was retained. *See Janes,* 659 N.Y.S.2d 165, 681 N.E.2d at 340.

Williams attempts to distinguish *Janes* because that case involved the failure to sell or diversify trust assets after they were invested in securities, while here the trust assets were invested in tax-exempt bonds during the mid–1970's, the time at which Williams contends the trustee's failures occurred. This distinction is without a difference because both claims concern alleged inattentiveness and inaction on the part of the trustee. (*See supra* note 3.) Furthermore, Williams's suggestion of a distinction between stocks and bonds as trust assets is unprecedented. Accordingly, the Court concludes that the *Janes* rule governs the calculation of damages should Williams prevail on liability.

### 2. Lost Profits

■ Under New York law, lost profits may be awarded where there is an allegation of self-dealing or bad faith. *See Rothko,* 401 N.Y.S.2d 449, 372 N.E.2d at 297–98; *Janes,* 659 N.Y.S.2d 165, 681 N.E.2d at 339. The estate in *Rothko* consisted mainly of the decedent Rothko's paintings. The three executors of his estate then sold the paintings to galleries in which two of the executors had professional and financial interests. *See Rothko,* 401 N.Y.S.2d 449, 372 N.E.2d at 293–95. As explained by the Court of Appeals, after a lengthy non-jury trial, the Surrogate's Court found that the three executors' "sale and consignment of paintings between the executors and [galleries] provided inadequate value to the estate, amounting to a lack of mutuality and fairness resulting from conflicts ... and improvidence." *Id.* at 294. The sales were set aside on the grounds of a breach of the fiduciary's duty of loyalty and improvidence. The Surrogate's Court imposed appreciation damages, and the Appellate Division affirmed. *See id.*

After analyzing public policies articulated in the Restatement Second of Trusts, the Court of Appeals affirmed the award of appreciation damages. *See id.* at 297–98. The Court of Appeals reasoned that "allowing appreciation damages, where there is a duty to retain, and only date of sale damages where there is authorization to sell" would provide appropriate incentives to trustees. *Id.* If a trustee has a duty to sell, the risk of increased damages might make the trustee reluctant to sell and thereby incur depreciation costs. On the other hand, if a trustee has a duty to retain, the risk of increased damages if he sells the asset will reinforce that duty. *See id.*

Subsequently, in *Janes,* the Court of Appeals limited the reach of *Rothko* by holding that an award of appreciation damages, or lost profits, was inapplicable unless "the fiduciary's misconduct consisted of deliberate self-dealing and faithless transfers of trust property." *Janes,* 659 N.Y.S.2d 165, 681 N.E.2d at 339. No Court of Appeals case has modified the *Janes* rule or suggested that it is inapplicable to trust assets other than securities.

Here, Williams has not alleged deliberate self-dealing or faithless transfers of property; rather, his allegations sound en-

tirely in negligence and/or failure to meet the prudent investor standard of care. As such, New York law is settled on the rule that loss of income or appreciation damages are unavailable to him in this action.

Williams argues that lost profits may be awarded for failure to invest or diversify under New York law based on Section 211 of the Restatement Third of Trusts (" § 211") and on public policy. Section 211 states in relevant part:

If the trustee is under a duty to purchase property for the trust estate and fails to purchase that property within a reasonable time, the beneficiaries: ... (2) may, ... if the duty was to acquire any property constituting a proper investment for the trust, charge the trustee with the amount of the funds trustee failed properly to invest, adjusted for the amount of the total return, positive or negative, that would have accrued to the trust estate had the funds been invested in a timely fashion ....

Restatement (Third) of Trusts, § 211 (1992). Williams's reliance on § 211 is unavailing because it represents a new rule that has not been adopted by any New York state court. The advisory comments to § 211 indicate that, at the time of its promulgation, its rule differed from New York law. See id. notes on §§ 205 and 208–11. The Court of Appeals not only has declined to adopt § 211, but has continued to refer to the Restatement Second of Trusts despite the publication of the third edition. See, e.g., Janes, 659 N.Y.S.2d 165, 681 N.E.2d at 337; Sage Realty Corp. v. Proskauer Rose Goetz & Mendelsohn, 91 N.Y.2d 30, 666 N.Y.S.2d 985, 689 N.E.2d 879, 883 (1997).

Moreover, the rule contained in § 211 can be fairly characterized as speculative. See Janes, 643 N.Y.S.2d at 982; see also Martin D. Beglieter, First Let's Sue All the Lawyers, 51 Hastings L.J. 325, 357–59 (2000). It may be that, as a matter of

policy and as Williams urges, allowing an award of appreciation damages theoretically might reinforce a duty to sell and invest trust assets. However, the benefits of such a policy would not be borne out in practice. That is, the measure of appreciation damages for a wrongfully retained asset is too speculative. To grant them, a court would be forced to generate and assign real-world value to the hypothetically reinvested proceeds from the asset. See generally Janes, 643 N.Y.S.2d at 982.

Williams also would have the Court apply federal case law concerning Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001 et seq., trust funds. However, ERISA case law regarding losses and the calculation of damages is largely defined by the ERISA statutory text, framework, legislative history and the common law of trusts. See Donovan v. Bierwirth, 754 F.2d 1049, 1052 and 1056 (2d Cir.1985); Sullivan v. LTV Aero. & Defense Co., 82 F.3d 1251, 1258–59 (2d Cir.1996). Thus, federal courts adjudicating claims under ERISA do not apply New York law in the same manner that a federal court sitting in diversity must do, and the Court declines to follow federal case law from the ERISA context. Likewise, the Court rejects Williams's argument that this Court should follow the example of other state courts that have adopted § 211 of the Restatement Third of Trusts. See Estate of Wilde, 708 A.2d 273, 276 (Me. 1998); First Alabama Bank v. Spragins, 515 So.2d 962, 966 (Ala.1987); Baker Boyer Nat'l Bank v. Garver, 43 Wash.App. 673, 719 P.2d 583, 591–92 (1986). Williams's arguments represent a dramatic departure from unequivocal state law principles articulated by the New York Court of Appeals. If his theory holds any sway, it must persuade and prevail in a New York State court. It is not the function of a federal court sitting in diversity and applying New York law to veer so substan-

tially from settled state law or to strike its own path grounded on federal doctrine or its own notion of appropriate policy.

For the foregoing reasons, the Court declines to create a new rule of New York state substantive law. *See Gasperini*, 518 U.S. at 426, 116 S.Ct. 2211 ("Federal diversity jurisdiction provides an alternative forum for the adjudication of state-created rights, but it does not carry with it generation of rules of substantive law."). The Court finds that rule in *Janes*, limiting appreciation or loss of profits damages to cases involving self-dealing, applies to the case at bar. Accordingly, as Williams alleges only trustee negligence and imprudent conduct, lost profit or appreciation damages are unavailable to him in this action.

### 3. *Interest, Commission Fees, Attorney's Fees and Costs*

It is within a court's discretion to award interest and to determine the applicable rate of interest. *See Janes*, 659 N.Y.S.2d 165, 681 N.E.2d at 339. The decision of whether to award interest depends on the factual circumstances of the case. *See King v. Talbot*, 40 N.Y. 76, 95 (1869); *In re Revson's Estate*, 86 A.D.2d 872, 447 N.Y.S.2d 297, 302 (2d Dep't 1982) (citing *Brown v. Knapp*, 79 N.Y. 136, 145 (1879)); *see also* C.P.L.R. §§ 5001, 5004. Summary judgment, however, is not appropriate where the material facts bearing on the issue are in dispute. *See Arnold v. Luckenbach Steamship Co.*, 160 F.Supp. 807, 809 (S.D.N.Y.1954); *Tondas v. Amateur Hockey Ass'n of U.S.*, 438 F.Supp. 310 (W.D.N.Y.1977). On the record before the Court, it would be premature to address the issue of interest.

In the absence of an allegation of self-dealing, misconduct or fraud there is no ground under New York law for disallowing a trustee's commission fee. *See King*, 40 N.Y. at 76; *In the Matter of Saxton*, 274 A.D.2d 110, 712 N.Y.S.2d 225, 233 (3d Dep't 2000). The decision to order a refund of commission fees is discretionary and must be based on the facts before the Court. *See In re Rutledge*, 162 N.Y. 31, 56 N.E. 511 (1900); *In re Baker's Estate*, 249 A.D. 265, 292 N.Y.S. 122, 130–31 (4th Dep't 1936); *Rothko*, 84 Misc.2d 830, 379 N.Y.S.2d 923, 952 (Surr.Ct.1975), *aff'd in part and mod. in part on other grounds*, 56 A.D.2d 499, 392 N.Y.S.2d 870 (1st Dep't 1977), *aff'd*, 401 N.Y.S.2d 449, 372 N.E.2d at 291. In the absence of a factual record, the Court cannot address the issue of commission fees.

A court has discretion to award attorney's fees in cases involving a trustee's negligent failure to sell a depreciating asset. *See In re Garvin's Will*, 256 N.Y. 518, 177 N.E. 24, 25 (1931); *Cooper v. Jones*, 78 A.D.2d 423, 435 N.Y.S.2d 830 (4th Dep't 1981); *see also Public Serv. Co. of Colo. v. Chase Manhattan Bank, N.A.*, 577 F.Supp. 92, 110 (S.D.N.Y.1983) (applying New York law). Again, it would be premature for the Court to address the issue of attorney's fees or costs.

## III. CONCLUSION

For the foregoing reasons, it is hereby

ORDERED that Morgan's motion for summary judgment on the issues of lost capital and lost income or appreciation damages is hereby granted; and it is further

ORDERED that Morgan's motion for summary judgment on the issues of interest and commission fees is denied; and it is further

ORDERED that Williams's motion for summary judgment on the issues of lost income or appreciation damages, interest, commission fees, and attorney's fees is denied; and it is finally

ORDERED that the parties appear for a status conference before the Court on May 31, 2002, at 2:00 p.m.

**SO ORDERED.**